ACCEPTED
04-15-00297-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
7/23/2015 11:11:19 AM
KEITH HOTTLE
CLERK

No. 04-15-00297-CV
IN THE FOURTH COURT OF APPEALS
FOR THE STATE OF TEXAS

HETUL BHAKTA D/B/A BUDGET INN

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
07/23/2015 11:11:19 AM
KEITH E. HOTTLE
Clerk

Appellant

VS.

TEXAS DEPARTMENT OF TRANSPORTATION

Appellee

BRIEF OF APPELLENT

ORAL ARGUMENT REQUESTED

V. GONZALEZ & ASSOCIATES, P.C.
Aloysius Peter Thaddeus, Jr.
State Bar No. 19819500
Email:peter@vgonzalezlaw.com
Vicente Gonzalez
State Bar No. 00798215
Email: vgusalaw@yahoo.com
V. GONZALEZ & ASSOCIATES, P.C.
121 North 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
Facsimile: (956) 630-0383
ATTORNEYS FOR APPELLENT

# IDENTITY OF PARTIES AND COUNSEL

HETUL BHAKTA D/B/A BUDGET INN

Plaintiff/Appellant

Aloysius Peter Thaddeus, Jr.
State Bar No. 19819500
Email:peter@vgonzalezlaw.com
Vicente Gonzalez
State Bar No. 00798215
Email: vgusalaw@yahoo.com
V. GONZALEZ & ASSOCIATES, P.C.
121 North 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
Facsimile: (956) 630-0383


Texas Department of Transportation

Defendant/Appellee

Susan Desmarais Bonnen
Attorney at Law
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL............................................................2

TABLE OF CONTENTS.................................................................................3

LIST OF AUTHORITIES...............................................................................4

STATEMENT OF THE CASE.........................................................................6

POINTS PRESENTED..................................................................................8

STATEMENT OF FACTS.............................................................................9

SUMMARY OF ARGUMENT.....................................................................12

ARGUMENT...........................................................................................15

      Standard of Review..........................................................................15

      Inverse Condemnation.....................................................................16

      Nuisance......................................................................................22

      Negligence...................................................................................25

CONCLUSION.........................................................................................26

PRAYER FOR RELIEF..............................................................................27

CERTIFICATE OF SERVICE......................................................................28

APPENDIX
      Appendix 1  Order Granting First Amended Plea to the Jurisdiction
      Appendix 2  Agreed Final Judgment
      Appendix 3  Texas Constitution article 1, §17
      Appendix 4  Texas Rule of Civil Procedure 47

Appendix 5  Texas Rule of Civil Procedure 85
Appendix 6 Appellant's Responses to Plea to the Jurisdiction which was
omitted from clerk's record (Supplement Requested)

# LIST OF AUTHORITIES

## CASES

*Harris County Flood Control District vs. Kerr,*
No. 13-0303, June 12, 2015....................................11, 14

*Kopplow Dev. Inc. vs. City of San Antonio,*
399 S.W.3d 532, (Tex. 2013)....................................11, 9

*Tex. Dep't of Parks & Wildlife vs. Miranda,*
133 S.W.3d 217, 228 (Tex. 2004)..........................11, 15, 14

*Schneider National Carriers, Inc. et al vs. Bates,*
147 S.W.3rd 264, (Tex. 2004)..............................12, 20

*Tarrant Regional Water District v. Gragg,*
151 S.W.3d 546, 555 (Tex.2004)..............................19

*Gen. Servs. Comm'n vs. Little-Tex Insulation Cop.,*
393 S.W.3d, 591, 598 (Tex. 2001)..........................14

*DuPuy vs. City of Waco,*
396 S.W.2d 103, 108 (Tex. 1965)..........................13

*State v. Hale,*
136 Tex. 29, 146 S.W.2d 731, 736 (1941)................10, 15

*City of Abilene v. Smithwick,*
721 S.W.2d 949, 951
(Tex.App.—Eastland 1986, writ ref'd n.r.e.)..............10, 15

## Constitutions, Statutes and other Rules

Tex. Const. art. I § 17...........................................9, 15

Texas Rule of Civil Procedure 47..........................11

Texas Rule of Civil Procedure 85..........................13

**Law Reviews**

Rebecca Simmons and Suzette Kinder Patton, <u>Plea to the Jurisdiction: Defining the Undefined,</u> 40 St. Mary's L. J., 629 (2009)................14

# I. Statement of the Case

This case arises out of multiple flooding occurrences of Appellant's motel property during the Defendant Texas Department of Transportation's (TxDOT) upgrade of U. S. Highway 281 to Interstate 69C through Falfurrias, Texas. Plaintiff owns the Budget Inn Motel located on the west side of the U.S. Highway 281 roadway in north Falfurrias. Repeated flooding of Appellant's motel property occurred during the construction process when TxDOT intentionally disconnected the flood\waste water channeling system without a substitute system in place in place resulting in substantial flooding of appellant's property. Plaintiff filed suit for inverse condemnation, negligence and nuisance against TxDOT and Ballenger Construction, Inc., TxDOT's general contractor. The proceedings were briefly stayed when Ballenger filed bankruptcy. The automatic stay was lifted and the case proceeded in discovery. After some discovery TxDOT filed its Amended Plea to the Jurisdiction alleging that it is protected by sovereign immunity and that the trial court lacked jurisdiction to hear any the Plaintiff's claims. In an interlocutory order the trial court granted TxDOT's Amended Plea to the Jurisdiction without any citing any specific grounds for the decision. Appellant and Ballenger Construction, Inc. settled Appellant's claims for personal property damage only. A final judgment was then entered and this appeal ensued. Ballenger is not a part of this appeal.

## II. POINTS PRESENTED

1.     Did the trial court err in granting Texas Department of Transportation's Plea to the Jurisdiction without citing any specific pleading defects?

2.     Did the trial court err granting the Texas Department of Transportation's Plea to the Jurisdiction because genuine issues of material fact exist which would be determinative of state's plea to the jurisdiction.

3.     Did the trial court err in granting the Texas Department of Transportation's plea to the jurisdiction because the Pleadings and evidence presented raise a genuine issue of fact question as to Appellant's claims of nuisance against TxDOT?

## III. STATEMENT OF FACTS

In 2009 the Texas Department of Transportation (TxDOT) began construction on 6.196 miles of U.S. Highway 281 in Falfurrias, Brooks County, Texas. During the construction planned disconnects of the existing storm\waste water run off system along the road way resulted in a foreseeable dramatic increase the volume storm water runoff being directed onto Appellant's motel property. In April and May of 2010 and again in June of 2012, excessive storm water runoff was directed to Appellant's property and inundating the motel property making it unusable as a motel for long periods of time. TexDOT in disconnecting the existing storm\waster system had no plan in place to redirect any storm water runoff away from Appellant's property. **CR pp_____Deposition of Danny Bhakta p. 20, l. 24 to p.21, l. 5; p 22, l.15 to P 22, l. 24   Appendix Exhibit 6.** The disconnection ordered by the TxDOT, and implemented by Ballenger Construction using motorized machinery to redirect the water flow, dramatically increased the flood water runoff to appellant's motel property on at least three different occasions and each time the Plaintiff was entirely excluded from using his own motel property. By his Third Amended Petition, Appellant plead that TxDOT embarked on the project to upgrade over six miles of U.S. Highway 281 in Falfurrias, Texas. TxDOT designed the construction project and contracted with

Ballenger Construction to perform the work which included reconfiguring the storm and waste water control systems to accommodate the new interstate quality roadway. **See CR pp. 78-85, Plaintiff's Third Amended Petition.**

Appellant sought inverse condemnation of his motel property because the repetitive flooding has denied him use of the property without compensation and will continue to deprive him of the use of his property during heavy rain events. Plaintiff has not been paid any money by the state for the repeated taking of the property for public use.

By his Third Amended Petition, Appellant alleged as follows:

"6.     Using plans designed by its employees or agents, TXDOT entered into a contract with Ballenger Construction intending to upgrade U. S. Highway 281 in Falfurrias, Texas to interstate highway standards. A necessary part of the TXDOT plans required TXDOT to change and alter the storm and waste water control system that existed along the entire length of the roadway through Falfurrias Texas. This included the area where Plaintiff's property is located. TXDOT knew that unless a proper storm and waste control system were in place Plaintiff's property would be flooded. TXDOT intentionally performed certain acts in the design of the flood control systems for the roadway that resulted in a "taking" of the Plaintiff's property for use as a public roadway. This damage occurred on or about April 16, 2010, May 25, 2010 and again in 2012. This repeated damage has resulted in the permanent taking of Plaintiff's property.

7.     During the implementation of the TXDOT redesign and reconstruction of the storm and waste water control systems Ballenger Construction Company, the agent or the employee or contractor of the Texas Department of Transportation using motor driver equipment disconnected the old storm and waste water control

10

system which altered the storm and waste water drainage to the extent it was no longer working in many places along the Highway 281 project in Falfurrias. In doing so, motor driven equipment was used to alter the surface drainage. Ballenger Construction Company changed the grade, drainage, and/or soil at or near the Plaintiff's hotel. While TXDOT intended for Ballenger to make the alterations they were done in such a way that the system no longer protected Plaintiff's property when heavy rains fell in the Falfurrias area. Ballenger knew or should have known that its failure to protect adjacent properties from the likely flooding conditions caused by disconnect of the existing storm and waste water drainage system would damage Plaintiff's properties. The failure of Ballenger Construction to protect Plaintiff's property from flood waters has caused property damage to the building located at 1033 N. U.S. Hwy 281, Falfurrias, Texas 78355.

8.     TXDOT's intentional plan for the storm and waste water control for the Highway 281 project increased storm water runoff that "detrimentally impacted" Plaintiff who was downstream of these activities. Such actions by the Defendants have resulted in multiple incidents of total temporary restricted access to Plaintiff's property without compensation and have culminated in a permanent taking of Plaintiff's property.   Alternatively, the governmental Defendant caused a non-negligent and unreasonable interference with the use and enjoyment of their property that resulted in nuisance damages.

. . .

12.     The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I § 17; Here, TXDOT's intentional acts physically damaged the Plaintiff's private property for the purpose of conferring a public benefit, and TXDOT either (1) knows that its act would cause identifiable harm, or (2) knew that the specific property damage was substantially certain to result from the construction methods utilized by Ballenger Construction on the nearby construction project.  Such conduct resulted in repeated total temporary loss of access and use of the Plaintiff's property without fair and reasonable compensation

11

that it is likely to reoccur. The repetitive loss has resulted in the permanent taking without compensation of the Plaintiff's property as a result of Defendants conduct.

The re-routing of the storm water control system was part of the TXDOT upgrading of the highway to the interstate quality for the public good. TXDOT knew or should have known that property owners adjacent to the roadway would be affected by the changes in the storm water control system."

**CR pp. 78-85.**

## V. SUMMARY OF ARGUMENT

The trial court gave no basis for granting the plea to the jurisdiction. Appellant is left challenge all possible basis for the granting of the plea. The overarching issue is can the Department of Transportation engage in large road construction projects with impunity for damaging the property and restricting the property rights of landowners adjacent to the road construction project?

### A.

To establish his claim for inverse condemnation, Plaintiff has to plead there was a taking. Plaintiff has plead that he was deprived of the use of his motel property by the flooding caused by the changes in the storm water system required by TxDOT without compensated. It is not disputed that TxDOT's agent, Ballenger Construction disconnected or blocked various parts of the storm water control

12

system without putting a substitute in place during the reconstruction of the roadway which caused excessive flood water to flood appellant's motel property as part TxDOT intentional plan to upgrade U.S. Highway 281.

The elements of a constitutional taking are (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a "taking" of property (3) for public use. *State v. Hale*, 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex.App.— Eastland 1986, writ ref'd n.r.e.). Pleadings must give only fair notice of the plaintiff's claims under Rule 47 of the Texas Civil Procedure. Appellant's pleadings sufficiently plead these elements to give TxDOT fair notice. **See CR pp.78-85.**

**B.**

The trial court erred in granting TxDOT's Plea to jurisdiction because Appellant raised in his response to the plea sufficient genuine questions of material fact questions through deposition testimony excerpts and other evidence admitted as evidence that his property had been "taken" by TxDOT without compensation. To defeat the governmental entities' plea to the jurisdiction, a landowner need only raise a fact issue as to each element of his claim. *Harris County Flood Control District vs. Kerr*, No. 13-0303, June 12, 2015; *Tex. Dep't of Parks & Wildlife vs.*

*Miranda*, 133 S.W.3d 217 (228 (Tex. 2004). Deposition testimony of TxDOT's Project Manager Oscar Cancino and Danny Bhakta, appellant's agent, raise sufficient fact issues sufficient to defeat the plea to the jurisdiction. Cancino testifies that the system disconnects were intentional by TxDOT and that TxDOT ordered Ballinger to go forward with the storm water runoff system disconnects. Mr. Bhakta testified about the multiple occurrence. Evidence multiple flooding occurrences can be probative of a "taking'. *See, Kopplow Dev. Inc. vs. City of San Antonio*, 399 S.W.3d 532, 537 (Tex. 2013).

**C.**

To establish TxDOT liability for nuisance claim Plaintiff must show 1) plaintiff has an interest in the land; 2) the defendant interfered with or invaded plaintiffs interest by conduct that is negligent, intentional or abnormal and out of place in its surroundings; 3) defendant's conduct resulted in a condition that substantially interferes with the plaintiff's use and enjoyment of the property; 4) and the nuisance caused injury to plaintiff. *Schneider National Carriers, Inc. et al vs. Bates,* 147 S.W.3rd 264, (Tex. 2004).

## V. ARGUMENT AND AUTHORITIES

When a road construction project directly interferes with, or restricts the rights of a landowner in a manner not suffered by the community, the property is damaged within the meaning of the Texas Constitution. *DuPuy vs. City of Waco*, 396 S.W.2d 103, 108 (Tex. 1965). The overarching issue is can TXDOT get away with interfering and restricting the right of Hetul Bhakta to operate his motel when it under takes a major road project. The Texas Department of Transportation did not undertake this project on a whim: presumably much planning and design went in to this major road project. TxDOT does not contest that Appellant Bhakta's motel property was flooded multiple times. TxDOT might even concede that extent of the flooding was at least partially caused by the changes in the flood water control system. TxDOT position has been that it can restrict or interfere with the private property use with immunity.

### Standard of Review

Rule 85 of the Texas Rules of Civil Procedure identifies pleas to the jurisdiction as one of several dilatory pleas. Tex. R. Civ. P. 85 ("The Original Answer may consist of motions to transfer venue, pleas to the jurisdiction, in abatement or any other dilatory pleas; of special exceptions, of general denial, and

15

any defense by way of avoidance or estoppel…"). However, procedures have varied from court to court and case to case. In some cases the plea is treated like a summary judgment without any procedural safeguards to ensure due process. Rebecca Simmons and Suzette Kinder Patton, Plea to the Jurisdiction: Defining the Undefined, 40 St. Mary's L. J., 629 (2009). Without any procedural guidelines, determinations of the sufficient of the granting or denial of a plea to the jurisdiction is governed by case law. In the instant case the trial court gave no basis for the granting of TxDOT plea to the jurisdiction.

To defeat a governmental entity's plea to the jurisdiction, a landowner need only raise a fact issue as to each element of his claim. *Harris County Flood Control District vs. Kerr*, No. 13-0303, June 12, 2015 p. 9 (Tex. 2015); *Tex. Dep't of Parks & Wildlife vs. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Sovereign Immunity does not shield TxDOT from liability under the takings clause. *Kerr*, p. 5 (Tex. 2015); *Gen. Servs. Comm'n vs. Little-Tex Insulation Cop.*, 393 S.W.3d, 591, 598 (Tex. 2001).

## A. INVERSE CONDEMNATION

TxDOT's intentional reconfiguration of the storm and waste water system control for the Highway 281 project increased storm water runoff that "detrimentally impacted" Plaintiff who is downstream of these activities. Such

actions by the Defendants have resulted in multiple incidents of total temporary restricted access to Plaintiff's property without compensation and have culminated in a taking of Plaintiff's property. Alternatively, the governmental Defendant caused a non-negligent and unreasonable interference with the use and enjoyment of their property that resulted in nuisance damages.

The Texas Constitution's takings clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." **Tex. Const. art. I § 17**; Here, TxDOT's intentional acts physically damaged the Plaintiff's private property for the purpose of conferring a public benefit.

The elements of a constitutional taking are (1) the State intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in a "taking" of property (3) for public use. *State v. Hale,* 136 Tex. 29, 146 S.W.2d 731, 736 (1941); *City of Abilene v. Smithwick,* 721 S.W.2d 949, 951 (Tex.App.— Eastland 1986, writ ref'd n.r.e.).

A plea to the jurisdiction that challenges the existence of jurisdictional facts, a reviewing court considers the relevant evidence to determine whether a fact question on the jurisdictional issue exists. *See Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex.2004). If the evidence raises a fact question on jurisdiction, then the trial court cannot grant the plea to the jurisdiction, and the

17

fact question will be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. As in the case at bar, recurrent flooding can be probative on relevant issues. *Kopplow* at p.537

The allegations contained in Plaintiff's Third Amended Petition meet the Texas Constitutional requirements by alleging that TxDOT intended to make improvements and upgrades to the U.S. Highway 281 roadway for the benefit of the public. Appellant has not received compensation from the state of Texas for the taking of his property on three or more occasions where storm water from the roadway flooded his property.

TxDOT's plea to the jurisdiction presumes that the April and May 2010 flooding incidents are so close together that TxDOT considers the two 2010 events as one flooding event. This is a subjective conclusion by TxDOT which is not supported by any evidence proffered by the appellee. Danny Bhakta testified to as three or as many as four floods from 2010 to 2012.

---
Q.    Let me do it this way. When were the three flooding events?
A.    2010 three times and two times in 2012.
Q.    Two times in 2004.
A.    No. '12.
Q.    2012?
A.    Yes.
Q.    Okay. So you had three times in 2010?
A.    Yes.

Q.    And two times in 2012?
A.    Yes.

**CR pp___Deposition of Danny Bhakta p. 20, l. 24 to p.21, l. 5; p 22, l.15 to P 22, l. 24   Appendix Exhibit 6**

At the time of the granting of plea TexDOT pointed to no particular testimony or evidence in its plea to the jurisdiction to contradicted Bhakta. There has been no evidence that TxDOT has done anything to re-direct storm water away from Appellant's property and prevent future flooding of the Appellant's property between the April and May 2010 incidents or between the 2010 and the June 2012 flooding incidents. All three incidents shut down the motel for the duration of the time it took to make the repairs Appellant could afford to accomplish.

Danny Bhakta, Appellant's testified to the damages from the flooding

Q.    Was it –and I understand there was two flooding events.
A.    Three.
Q.    Three. Was the major renovations after all three flooding events?
A.    Yes. We did some and flood again so we did again. Flooded again.
---
Q.    So you did some I between but the major money was spent after final flooding.
A.    There you go.

**CR pp_____Deposition of Danny Bhakta p. 20 l.24 to p.21 L 10, Appendix Exhibit 2**

---
Q.    All right. And what was the reason to do the new carpet and painting?

A. Flooding.

Q. Okay. Is it the same flooding back in 2010?

A. No. We do partially because it need more attention. We do partially because it need more attention. We had to open the business to start collecting money so we do partial and get going and sometimes short of money.

Q. Okay. So you couldn't complete all the work?

A. Yeah. No.

**CR pp_____Deposition of Danny Bhakta p. 21 l.24 to p.21 L 5, Appendix Exhibit 2**

According to sworn testimony by TxDOT's Project Manager Cancino, the flooding of Plaintiff's motel property was caused by intentional disconnects in the existing storm water control system that were required by TxDOT as part of the intentional upgrading of the U.S. Highway 281:

32

Q What started the problem that flooded the Budget Inn?

MS. JOHNSON: That's still a little vague. But you can answer.

Q But you may answer.

A The problem that we observed was, with the proposed storm sewer that was being placed, there was some disconnects within that system.

Q Okay. First define what a "disconnect" is.

A Not a -- a consistent or continuous --

Q Okay.

A -- system that would discharge runoff

**CR p. 107, Deposition from Oscar Cancino, TxDOT Engineer. Page 32**

"Q Okay. I may have some paperwork later that we can talk about. So we've identified water flowing from the Budget Inn area, potentially over top of the roadway

20

or underneath or around, but in general winding up at the Budget Inn. And that's as a result of the disconnects in that continuous storm sewer system, correct?

A    And the storm.

Q    And the storm. Thank you. Why is the junction relevant?

A    Because again, beginning with -- with the pipe placement, one would begin at the outfall and work their way up. So as you're sequencing that construction, you always have a connection to your discharge point.

Q    Is -- then the problem that there was nowhere else for the water to go after it reached that point, and it sort of backed up?

A    Yes. There's -- there's no way to convey it across and to the -- to the creek at that point. There's no connections along the system that was being placed at the time.

**See CR P. 169.    Deposition from Oscar Cancino, TxDOT Project Manager. Page 40.**

In *Kopplow Dev. Inc. vs. City of San Antonio*, 399 S.W.3d 532, 537 (Tex. 2013), the Supreme Court held that recurrence [of flooding] is a probative factor. ("[i]n the case of flood-water impacts, recurrence is a probative factor in determining the extent of the taking and whether it is necessarily incident to authorized government activity"). Appellant has provided evidence of at least three flooding incidents of flooding directly related to the road construction of U.S. 281 by TxDOT and its contractor. **CR pp___Deposition of Danny Bhakta p. 20, l. 24 to p.21, l. 5; p 22, l.15 to P 22, l. 24   Appendix Exhibit 6.**

21

The Supreme Court has also held that "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Regional Water District v. Gragg,* 151 S.W.3d 546, 555 (Tex. 2004); *Kopplow* at p. 537. With flood water impacts, recurrence is a probative factor in assessing intent and the extent of the taking. *Gragg* at p. 555. With at least three separate flooding occurrences of the Plaintiff's property, TxDOT cannot ignore that the flooding caused by the specific act of disconnecting and reconfiguring the storm water control system deprived the Plaintiff of his property and will likely do so again in the future. TxDOT offers no contradicting evidence.

## B. Nuisance

To establish TxDOT liability for nuisance claim Plaintiff must show that the Appellee's conduct resulted in an unreasonable interference with a right common to general public. A "nuisance" is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities. *Schneider National Carriers, Inc. et al vs. Bates,* 147 S.W.3rd 264, 269 (Tex. 2004). Repetitive flooding can be considered a nuisance. *Schneider* at p. 269 (citing, *Kraft v. Langford,* 565 S.W.2d 223, 227 (Tex.1978) *and City of Amarillo v. Ware,* 40 S.W.2d 57 (Tex.Com.App. 1931),

22

120 Tex. 456). Plaintiff must plead that TxDOT intentionally performed certain acts that resulted in a taking of property for public use. TxDOT's intent must be examined at the time it made its decision to construct the U.S. Highway 281 upgrade. Intent can be inferred by the recurrent nature of the flooding. *Gragg* at p. 555; *Kopplow* at p. 537. In the testimony of the TxDOT's Project manager Cancino, it is clear that part and parcel of the highway upgrade was a reconfiguration of the storm water control system. The evidence is that the old system was disconnected prior to the rainstorm. **CR pp. 107 and 169. Excerpts from Deposition from Oscar Cancino**. Appellant has properly alleged that at least three flooding occurrences are an interference with the use of Appellants property and flooding that caused damages.

Plaintiff has alleged that the Defendant acted intentionally and/or unreasonably in its interference with the flow of surface waters such that their conduct constitutes the legal cause of an invasion of Plaintiff's interest in the private use and enjoyment of his property. Three flooding instances over a two year period constitute an intentional taking of the Plaintiff's property by the State of Texas. *Schneider* at p. 269.

The Supreme Court has held that the intent standard for physical damage to private property means that liability may apply if an entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property

23

damage is substantially certain. *Kopplow* at pp 537-538. *Gragg* at p. 555. TxDOT cannot logically, or reasonably, argue that when it undertook to reconfigure the storm water control system that it did not intend to alter the flow of storm water to accommodate the new roadway.

Plaintiff would show that he has properly pleaded a takings claim as part of his allegations that the Defendant's created nuisance which damaged his property:

### "I. Count 4 - Nuisance

Defendant TXDOT and Ballenger Construction Company's interference with the flow of surface waters constitutes an invasion of Plaintiff's interest in the use and enjoyment of land and constitutes a Nuisance. The Defendants have acted intentionally and/or unreasonably in their interference with the flow of surface waters such that their conduct constitutes the legal cause of an invasion of Plaintiff's interest in the private use and enjoyment of his property."

See CR p_____, Plaintiff's Third Amended Petition.

The testimony of Bhakta, set out above, is that the motel was shut down because of the flooding and then reopened after some repairs to generate additional income to pay for more repairs. **CR pp___Deposition of Danny Bhakta p. 20, l. 24 to p.21, l. 5; p 22, l.15 to P 22, l. 24  Appendix Exhibit 6.**

TxDOT does not argue that Bhakta's motel was not damaged. It is unchallenged by TxDOT that flood water runoff caused by TxDOT's disconnecting of the control system contributed to the severity of the flooding and to the severity of the damage. The sworn testimony of the TxDOT Project

24

Manager Cancino and by Danny Bhakta, **Supra,** are some evidence that TxDOT knew that a specific act of the flooding caused the identifiable harm (damage to the motel). Appellee has offered nothing to contradict Bhakta's assertions that his motel property was flooded and the flooding caused damage to his motel. Appellant requests the court overrule the trial court judgment and remand this cause for a jury trial on the merits.

### C. Negligence in the Operation of a Motorized Driven Equipment

TxDOT certainly did not intend the 6.196 miles of road construction work on U.S. Highway 281 to be done by hand by hand. Doubtless motorized equipment in the form of motorized ditch digger, back hoes, motor graders and similar road building equipment was involved in the road construction and particularly in the reconfiguring of the storm water control system. **CR P_____See Exhibit 5 to Plaintiff's Response to Plea to the Jurisdiction, (Photograph of road work using motor driven equipment.) Appendix Exhibit 6**. It is therefore not a large leap to the conclusion that TxDOT or its agents (Ballenger Construction), utilized motor driven equipment to make carrier the intent of TXDOT to reconfiguring

As a governmental entity, TxDOT is a governmental unit whose employee was performing a governmental function for which immunity is waived. The TxDOT employee(s) and agents, while acting within the scope of employment, were negligent. The Appellant's property damage arose from the operation or use

25

of a motor-driven vehicle or motor-driven equipment by Ballenger used to disconnect the existing storm water and waste control system with creating any safeguards to prevent flooding of Plaintiff's property. Ballenger, either acted at the direction of TXDOT, its conduct in proximately causing damage to the Plaintiff's property. Appellant requests the court reverse the trial court judgment and remand this cause for jury trial on the merits

## VI.
## Conclusion

Left with not knowing the basis for the court's granting of the plea to the jurisdiction, Appellant is left to shoot in the dark as to what is the specific deficiency in either his pleading or his evidence. Property owners, it would seem TxDOT believes, are at the mercy of state-sponsored large road reconstruction projects like this one in Falfurrias, Texas. With not so much as an apology for, at the very least, contributing to if not causing the multiple catastrophic flooding of his Appellant's business TxDOT says it is immune and is not responsible.

The uncontradicted evidence before the court is that the Budget Inn in Falfurrias, Texas was flooded on multiple occasions as a result of a changes in the flood water control caused by actions of TxDOT and its agents. TxDOT does not deny the flooding occurred. The fact question that remains for the trier of fact is did that flooding deprive the appellant of the use of his property without fair compensation from TxDOT as appellant has alleged? For these very reasons, this

26

court should overrule the trial court's granting of the plea to the jurisdiction and remand this case for a jury trial on the issues of fact.

## VII.

### Prayer

Wherefore premises considered Appellant Hetul Bhakta d/b/a Budget Inn prays that the court of appeals grant the relief requested plus any and all other relief at law or in equity to which the Appellant maybe entitled.

Respectfully submitted,

V. GONZALEZ & ASSOCIATES, P.C.
121 North 10th Street
McAllen, Texas 78501
Telephone: (956) 630-3266
Facsimile: (956) 630-0383

*/s/ Aloysius Peter Thaddeus, Jr.*
Aloysius Peter Thaddeus, Jr.
State Bar No. 19819500
Email:peter@vgonzalezlaw.com
Vicente Gonzalez
State Bar No. 00798215
Email: vgusalaw@yahoo.com
ATTORNEYS FOR APPELLANT Hetul
Bhakta D/b/a Budget Inn

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all attorneys of record in accordance with the Texas Rules of Appellate Procedure on this the _____ day of July 2015 as follows:

**VIA FAX:** *(512) 472-3855*
Susan Desmarais Bonnen
Attorney at Law
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548

*/s/ Aloysius Peter Thaddeus, Jr.*
Aloysius Peter Thaddeus, Jr.